UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| SUSAN MAE BOATES | : | |
| Debtor | : | Bankruptcy No. 05-17077 |

| | | |
|---|---|---|
| SUSAN MAE BOATES and RICKY L. BOATES | : | |
| | : | |
| Plaintiffs | | |
| v. | : | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | : | Adversary No. 06-0053 |
| Defendant | : | |

...................................................

MEMORANDUM

...................................................

　　　　Two related matters are presently before me.  First, Federal National

Mortgage Association (FNMA) has filed a motion in the debtor's chapter 13 bankruptcy

case, under 11 U.S.C. § 362(d), seeking emergency relief to annul the bankruptcy stay to

permit it to eject the debtor pursuant to Pennsylvania law from property formerly owned

by her.  Second, the debtor and her husband have filed a complaint alleging that FNMA's

pending state court ejectment action violates the automatic stay, 11 U.S.C. § 362(a).  The

plaintiffs seek injunctive and monetary relief, including punitive damages and attorney's fees under 11 U.S.C. § 362(h).[1]

This contested matter and adversary proceeding follow an earlier contested matter between the debtor and Gilpin, Van Trump & Montgomery, Inc. (hereinafter "Gilpin") regarding the latter's May 20, 2005 foreclosure sale of property located at 1024 Langley Street, Trainer, Pennsylvania.  In that prior dispute, Gilpin complained that the debtor willfully breached an agreement made in state court by filing a chapter 13 petition on May 18, 2005, thus rendering that bankruptcy filing in bad faith.  Gilpin sought a ruling from this court that validated its post-bankruptcy foreclosure sale of the debtor's residence.  After a hearing in that contested matter, I entered an order, dated July 6, 2005, which provided in relevant part: "[T]hat the bankruptcy stay is retroactively terminated in favor of Gilpin, Van Trump & Montgomery, Inc. pursuant to 11 U.S.C. § 362(d)(1) to May 20, 2005, just prior to the Sheriff sale of the real property located at 1024 Langley Street, Trainer, Pennsylvania.  The movant can exercise its state law rights to record a Sheriff's deed for the real property."

The debtor filed an appeal from that order in the district court, pursuant to 28 U.S.C. § 158.  On January 23, 2006, the district court issued a memorandum and order denying the debtor's appeal and affirming this court's ruling in favor of Gilpin.  See In re Boates, 2006 WL 166569 (E.D. Pa. 2006).  The 30-day appeal period found in 28 U.S.C. § 2107(a) has not yet expired, and thus the debtor may still seek appellate court review of

_____

[1]Section 362(h) was amended effective October 17, 2005, with its provisions moved to section 362(k).  As this bankruptcy case was filed before the amendment took effect, the pre-amendment section 362(h) applies, see Pub. L. 109-8, § 1501(1), and therefore will be cited as such throughout this memorandum.

2

the district court decision.  Indeed, at the hearing just held, debtor's counsel stated that an appeal was under active consideration.  I consider it likely that a further appeal will be filed.

I shall first review the facts presented at the consolidated hearing in the present contested matter and adversary proceeding.  Thereafter, I shall consider the numerous legal issues posed by these disputes, including the question of subject matter jurisdiction in light of the likelihood of a pending appeal.

I.

The parties have proceeded in these two matters as though the facts of the earlier dispute with Gilpin were understood.  I shall summarize those facts, as they were upheld by the district court, as well as note the additional facts proven at the just completed consolidated evidentiary hearing.

On December 18, 2003, Ricky Leo Boates and Susan Mae Boates filed a joint voluntary chapter 13 petition, docketed at Bankr. No. 03-38707.  Mr. and Mrs. Boates filed this bankruptcy case to prevent the foreclosure of their home, located at 1024 Langley Street, Trainer, Pennsylvania.  At the time of their 2003 bankruptcy filing, Gilpin held a mortgage on the Boateses' residence.

On October 25, 2004, Gilpin filed a motion to terminate the automatic stay in order to resume its state court foreclosure process, alleging that Mr. and Mrs. Boates had fallen behind in their post-bankruptcy mortgage payments.  On November 5, 2004, Mr. and Mrs. Boates moved to voluntarily dismiss their chapter 13 case, pursuant to 11

3

U.S.C. § 1307(b).[2]  This request was granted by an order dated November 9, 2004.  In

addition, and in accordance with 11 U.S.C. § 109(g)(2),[3] the order barred Mr. and Mrs.

Boates from filing any further bankruptcy cases for a period of 180 days.  See, e.g., In re

Hogan, 2004 WL 2806206, (N.D. Ill. 2004); In re Munkwitz, 235 B.R. 766 (E.D. Pa.

1999).  As a result, neither Mr. nor Mrs. Boates was eligible to file a bankruptcy petition

until May 9, 2005.

       Gilpin had obtained a judgment in mortgage foreclosure against Mr. and

Mrs. Boates, and sought to enforce that judgment by scheduling a sheriff sale of the realty

on March 18, 2005.  Mr. and Mrs. Boates filed an emergency petition with the state court

on March 17, 2005, seeking to postpone this sale until May 20, 2005.  In their emergency

state court petition, the former debtors asserted that if the foreclosure sale were delayed,

they would liquidate a retirement account owned by Mrs. Boates, as well as sell their

timeshare interest in Florida property.  The sale and liquidation of these assets, they

alleged, would be sufficient to cure in large part any mortgage default owed to Gilpin.

---

[2]At the evidentiary hearing just held, the debtor and her husband testified that they
voluntarily dismissed their earlier joint bankruptcy case based upon a promise made by their son
to loan or give them sufficient funds to cure their mortgage delinquency with Gilpin.  Their son
did not fulfill that promise.

[3]This subsection provides:

(g) Notwithstanding any other provision of this section, no
individual or family farmer may be a debtor under this title who
has been a debtor in a case pending under this title at any time in
the preceding 180 days if--
                           ***
(2) the debtor requested and obtained the voluntary dismissal of the
case following the filing of a request for relief from the automatic
stay provided by section 362 of this title.

4

Alternatively, the former debtors asserted in their state court emergency petition that they could refinance their real property and repay Gilpin in full.

This emergency petition resulted in the postponement of the foreclosure sale until April 15, 2005.  On that date, the state court held a hearing to determine if any further postponement of the foreclosure sale were warranted.  At the conclusion of the April 15th hearing, the state court agreed to postpone the foreclosure sale until May 20, 2005, as requested by the petitioners.

While the April 15th sale date was still within the time period during which Mr. and Mrs. Boates were barred from filing bankruptcy petitions, the May 20th date was outside the 180-day period.  Apparently, this concerned the state court, for in issuing an order granting a further postponement of the foreclosure sale to May 20th, the state court added the following language to its April 15th order:

> Defendants [Mr. and Mrs. Boates] agree that they will extend the 180 day prohibition for filing any further bankruptcy by an add'l 30 days which will extend such prohibition beyond May 20, 2005 and that they will not file any further [state court] petition to postpone the May 20, 2005 sale.  Defendants shall sign all documents to implement above when presented for signature.

Although Mr. and Mrs. Boates obtained the desired postponement, they were unable to liquidate assets sufficient to repay Gilpin.

On May 18, 2005, Mrs. Boates filed the above-captioned chapter 13 bankruptcy petition.  Gilpin, who was informed of the debtor's second bankruptcy filing, then presented a copy of the April 15th state court order to the sheriff of Delaware County, who proceeded with the foreclosure sale.  The debtor's residence was sold at auction on May 20, 2005.

5

FNMA has offered into evidence in this contested matter a copy of the sheriff's deed for the Boateses' residence.  Ex. M-1.  This deed, dated June 22, 2005, is in favor of FNMA.  Thus, FNMA is now the owner of the Langley Street property.  However, there was no evidence that FNMA was ever a mortgagee of the debtor or her husband, nor that it was an assignee of a promissory note.  Furthermore, after obtaining the deed from the sheriff, there was no evidence that FNMA has entered into any agreements, leasing or otherwise, with the debtor or her husband.

Prior to the date of the deed, on June 7, 2005, FNMA commenced an ejectment action in state court against the Boateses.  Ex. D-2.  It obtained a judgment in ejectment on July 19, 2005.  Id.  On August 3, 2005, a writ of possession was issued.  Ex. D-4.  On August 17, 2005, debtor's counsel sent a letter to counsel for FNMA (which counsel is different that the firm that represented Gilpin) that, inter alia, gave notice that Mrs. Boates had a pending chapter 13 case and asserted that execution of the writ of possession must be stayed.  Ex. D-5.  At trial, an employee of FNMA's counsel testified that he was first aware of the pending bankruptcy case in August 2005.  In all likelihood, the August 17th letter provided that notice.  The debtor offered no evidence that FNMA knew or should have known of her pending bankruptcy case prior to the time her attorney sent the August 17th letter.

FNMA appears to have taken no action to enforce the August 3rd writ.  However, on October 17, 2005, it had the writ of possession reissued for the Langley Street property.  Ex. D-8.  On December 21, 2005, the sheriff of Delaware County issued notice to Mr. and Mrs. Boates that the sheriff intended to evict the occupants of Langley Street on February 24, 2006 at 9:00 a.m.  Ex. D-9.

6

By letter dated January 4, 2006, counsel for FNMA informed debtor's counsel that she construed this court's order of July 6, 2005 as permitting the writ of possession to be enforced.  Ex. D-6.  Debtor's counsel then replied on January 6, 2006 that he interpreted the July 6th order more restrictively, and that the eviction action could not take place in light of the bankruptcy stay.  Ex. D-7.

On January 20, 2006, FNMA filed its present motion to annul the bankruptcy stay.  On January 23, 2006, the debtor and the non-debtor spouse filed the instant complaint alleging FNMA's willful violation of the bankruptcy stay.

Mr. Boates testified at the consolidated trial that he has been disabled for more than 12 years.  At some point around Christmas 2005 he became despondent at the thought of losing his home and sought medical treatment for depression.  He takes medication for this problem, at a cost of a few hundred dollars since December 2005.  Mrs. Boates is also presently unemployed, and she too has had a number of medical problems for years which, she believes, renders her disabled.  She testified that her concern about eviction exacerbated her illnesses necessitating medical attention.  She estimated her medications as costing thousands of dollars since December 2005.  The Boateses' teenaged daughter has also experienced depression as a result of the family's legal woes, and began psychological therapy treatments in September 2005.  Her problems have resulted in home-schooling for the child.

When providing this testimony, the Boateses offered no documents to corroborate costs or identify medications.  Nor was there any expert testimony offered to explain the connection, if any, between their current medical conditions, their feelings of stress and depression, and their long-standing various illnesses that had left them

7

unemployed and disabled.  Moreover, there was no evidence to differentiate between the stress caused by Gilpin's foreclosure sale of the residence, of which the debtor and her family were likely aware (especially in light of the Gilpin motion in this court), and FNMA's attempt to execute on its judgment in ejectment.

Finally, the testimony revealed that the Boateses have remained in the Langley Street property without making any mortgage or rent payments for at least one year.  Mortgage payments were about $800 per month.  As a result of these non-payments, and of Mrs. Boates receiving a requested lump sum payment in lieu of a pension, the Boateses have been able to save about $10,000.


II.


A.


Federal courts, including bankruptcy courts, are obligated to insure that they have subject matter jurisdiction over disputes and may raise the issue sua sponte.  See, e.g., In re Yousif, 201 F.3d 774, 776 (6th Cir. 2000); Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995); In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989).  I therefore requested that the parties consider the jurisdictional implication stemming from the debtor's likely continued appeal of this court's July 6, 2005 order in favor of Gilpin.

In general, the pendency of an appeal will deprive a bankruptcy court of jurisdiction over those matters involved in the appeal.  See generally In re Mazzocone,

8

1995 WL 113110, at *4 (E.D. Pa. 1995); In re Southold Development Corp., 129 B.R. 18 (E.D.N.Y. 1991); Matter of Eddis, 37 B.R. 217, 217 (E.D. Pa. 1984). Once an appeal has been taken, the lower court (including a bankruptcy court) loses its subject matter jurisdiction (or power) to grant relief which would alter or directly affect the order on appeal. See, e.g., Main Line Federal Sav. and Loan Ass'n v. Tri-Kell, Inc., 721 F.2d 904, 906-07 (3d Cir. 1983); In re Wallace's Bookstores, Inc., 330 B.R. 193 (Bankr. E.D. Ky. 2005). This loss of jurisdiction prevents the lower court from acting even with the consent of all parties. See Thompson v. Harry C. Erb, Inc., 240 F.2d 452, 454 (3d Cir. 1957) ("The attempted substitution of the amended complaint is ineffective. The signature of the district judge on the stipulation gives no life to the amended complaint as the taking of the appeal had divested the district court of jurisdiction of the cause of action and transferred the latter to this tribunal."). However, the bankruptcy court retains jurisdiction over disputes not affected by the issues on appeal. See, e.g., In re Legend Radio Group, Inc., 248 B.R. 281, 284 (W.D. Va. 1999).

Application of this jurisdictional principle can be difficult in bankruptcy cases, where there may be numerous contested matters and adversary proceedings. See generally In re Hessinger & Associates, 192 B.R. 211, 218 (N.D. Cal. 1996). For example, in In re Borg, 92 B.R. 475 (Bankr. D. Mont. 1988), the bankruptcy court held that an appeal from a confirmation order did not stay a hearing on a motion to dismiss the case. The court considered the issue of dismissal distinct from the issue of confirmation. The Sixth Circuit Court of Appeals reached the opposite conclusion in Hardin v. Caldwell, 897 F.2d 529 (Table), 1990 WL 20457, at *5 n.19 (6th Cir. 1990). In In re Cantwell, 639 F.2d 1050 (3d Cir. 1981), the Third Circuit implicitly decided that an

9

appeal from an order that refused to stay the entry of a bankruptcy discharge did not

preclude the later entry of the discharge order, thereby mooting the appeal.

Insofar as stay relief is concerned, a pending appeal from an order

terminating the bankruptcy stay in favor of a creditor would preclude a bankruptcy court

from later granting the debtor's request to enjoin the creditor or to reimpose the automatic

stay.  See, e.g., In re Bialac, 694 F.2d 625 (9th Cir. 1982); In re Kendrick Equipment

Corp., 60 B.R. 356 (Bankr. W.D. Va. 1986).  Conversely, in In re Wade, 115 B.R. 222,

(B.A.P. 9th Cir. 1990), aff'd, 948 F.2d 1122 (9th Cir. 1991), the Ninth Circuit Bankruptcy

Appellate Panel held that an appeal by the debtors from an order terminating the

automatic stay did not bar the bankruptcy court from later dismissing, on procedural

grounds, the debtor's claim against that creditor for sanctions in allegedly violating the

stay.

In this instance, the July 6, 2005 order granted certain relief to Gilpin, who

was identified as the holder of the prepetition mortgage against the Langley Street realty

and who had foreclosed upon its prepetition judgment.  FNMA—which does not appear

to be a creditor in this case, in that it held no prepetition claim or lien against the

debtor—was not a party to that contested matter.  Thus, to the extent that the debtor or

non-debtor asserts a claim against FNMA under section 362(h), I have the jurisdiction to

order the grant or denial of such a claim, so long as the determination would not alter or

modify the terms of the July 6th order.  Similarly, to the extent that FNMA asserts a right

to relief against the debtor under section 362(d)(1), I can grant or deny relief, so long as I

do not modify the order on appeal.[4]


B.


A second issue involving my power to grant relief concerns the claim under

section 362(h) by Mr. Boates against FNMA.  Although he is not a debtor in this

proceeding, he asserts nevertheless that FNMA violated the bankruptcy stay and he is

entitled to relief under section 362(h).  It is well-understood, however, that the bankruptcy

stay only protects debtors, see, e.g., McCartney v. Integra Nat'l Bank North, 106 F.3d

506, 509 (3d Cir. 1997) ("Although the scope of the automatic stay is broad, the clear

language of section 362(a) stays actions only against a 'debtor.'"), and thus does not

include a debtor's family members within its scope.  See, e.g., N.L.R.B. v. McDermott,

300 B.R. 40, 43-44 (D. Colo. 2003).  Therefore, a non-debtor spouse would appear to

have no standing to raise a claim under section 362(h).  See In re Siskin, 231 B.R. 514,

518-19 (Bankr. E.D.N.Y. 1999).  And the standing of a party to proceed is a precondition

for the exercise of jurisdiction by a federal court, and may be considered at any time.  See

generally Qwest Communications Int'l, Inc. v. F.C.C., 240 F.3d 886, 891 (10th Cir.

2001); Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 82 (2d Cir. 1996).

---

[4]For example, if two entities hold liens against the same realty, and if a
bankruptcy court issues an order either granting or denying one lienholder relief from the
automatic stay and if that order is then appealed, the appeal would not deprive the bankruptcy
court of jurisdiction to consider a motion by the second lienholder for relief from the stay.  This
follows even though the second order may result in actions—i.e., the sale of the collateral— that
may render the first order moot.

11

Mr. Boates attempts to circumvent this standing limitation involving section 362(h) by suggesting that the chapter 13 "co-debtor stay," found in section 1301(a) of the Bankruptcy Code, protects him and was violated by FNMA.  Section 1301(a) provides;

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless–
>
> (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

As noted by an appellate court, the purpose of the so-called co-debtor stay "is to enable the consumer-debtor to propose a [chapter 13] repayment plan without undue pressure to give preference to a debt involving a co-signer.  Congress believed that if a creditor could automatically reach the assets of a co-signer, who is generally a close friend or a relative of the debtor, then the co-signer would induce the debtor to give preference to that debt. Such a preference could easily frustrate the ability of the debtor to submit an acceptable plan."  Harris v. Fort Oglethorpe State Bank, 721 F.2d 1052, 1053 (6th Cir. 1983).

Mr. Boates' reliance upon section 1301 overlooks that this statute expressly enjoins "creditors" holding certain types of claims.  Section 101(10)(A) of the Code defines a "creditor" as an entity holding a prepetition claim.  The debtor offered no evidence to demonstrate that FNMA was a creditor of Mrs. Boates or of Mr. Boates.  See In re Blue, 247 B.R. 748, 751-52 (Bankr. N.D. Ill. 2000).  Compare In re Harris, 203 B.R. 46 (Bankr. E.D. Va. 1994) (non-debtor spouse who signed the mortgage was protected by

12

the co-debtor stay from foreclosure actions undertaken by the mortgagee).  FNMA held

no note or mortgage signed by either party.  FNMA could not exert pressure on Mr.

Boates to repay some debt also owed by the debtor.  Furthermore, FNMA held no interest

in the Langley Street property until after this bankruptcy case commenced; accordingly, it

could not possibly hold any prepetition claim.

Therefore, in considering the plaintiffs' claims under section 362(h), I must

conclude that Mr. Boates has no standing to complain of FNMA's willful violation of the

stay and has proven no cause of action under section 1301.[5]

III.

FNMA raises three arguments, made in the alternative, for relief from this

court.  It contends at the outset that the July 6th order permitted it to proceed with its

ejectment action without necessity of any further order from this court.  In that sense, it

may be seeking a declaration of its rights.  Alternatively, it argues that if further relief

from this court were necessary, the bankruptcy stay should be annulled so that its June

2005 ejectment lawsuit, including enforcement of the writ of possession, is validated.

And, again, alternatively, if retroactive relief is denied, then FNMA seeks prospective

relief from the bankruptcy stay to eject the debtor.

---

[5]In contrast to section 1301, sections 362(a), 362(d) and 362(h) do not restrict
their scope to "creditors."  For example, section 362(a) enjoins "entities."  Section 362(d)
permits "parties in interest" to seek relief from the automatic stay.

The debtor maintains that, at most, FNMA is entitled to prospective relief, but requests that such relief be conditionally denied so long as the debtor tenders regular monthly mortgage payments.  Debtor's Post-Trial Memorandum, at 7.

A.

At the outset, I must disagree with FNMA's interpretation of the July 6, 2005 order.

The July 6th order retroactively terminated the bankruptcy stay in favor of Gilpin to a moment just prior to the May 20th foreclosure sale, in order to validate the sale and permit the sheriff to record the deed to the Langley Street property.  The relief granted to Gilpin should be contrasted with that proposed by Gilpin in its motion.  Gilpin proposed the following order:

> The Automatic Stay of all proceedings, as provided under Section 362 of the Bankruptcy Reform Act of 1978 (The Code) 11 U.S.C. Section 362, is modified and annulled to allow GILPIN, VANTRUMP & MONTGOMERY INC. and its successor in interest, to proceed with its state court remedies, through but not limited to recordation of Sheriff's Deed for sale held on May 20, 2005 a possessory action regarding the premises 1024 Langley Street Trainer, PA 19013. Furthermore further bankruptcy filings for a period of one hundred eighty (180) days hereof shall not prevent the Moving Party from proceeding with its state court remedies.

Proposed Order submitted by Gilpin (as required Local Bankr. R. 9014-3(f)(1)).

The July 6th order granted Gilpin more limited relief than requested, in part, because (as will be discussed in detail below) the granting of an annulment of the stay is appropriate only in limited circumstances and should be narrowly crafted based upon the

14

equities.  I had noted in the memorandum accompanying that order that "it would have

been preferable for Gilpin to have sought emergency relief in this court, rather than

proceeding with the Sheriff sale on May 20th" once it learned of Mrs. Boates' bankruptcy

filing.  Memorandum, at 21.  Thus, I had anticipated in July 2005 that Gilpin would seek

additional, prospective relief from this court as appropriate, as there was no evidence of

FNMA's purchase of the property at the hearing held on Gilpin's motion.

     I acknowledge, though, that the July 6th order could have made that point

expressly rather than inferentially.  I also appreciate that FNMA, which was not involved

in the earlier contested matter and which has engaged different bankruptcy counsel, may

not have understood the distinction between the relief proposed by Gilpin and that

granted by this court.  While this legitimate confusion will be relevant to the question of

willfulness in FNMA's actions, I do agree with the debtor's contention that the July 6,

2005 order does not, by itself, permit FNMA to execute upon its ejectment judgment.


B.


     I thus turn to FNMA's alternative position that it is now entitled to relief

under section 362(d)(1) and that such relief should be retroactive.

     In general, the filing of a bankruptcy case stays the initiation or continuation

of all lawsuits against the debtor by virtue of section 362(a)(1).  See, e.g., Maritime Elec.

Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991).  Moreover, section

362(a)(3) of the Code enjoins not only actions to obtain property of the estate but also

actions to obtain property "from the estate."  Regardless of whether Mrs. Boates had title

15

to the Langley Street realty on June 7, 2005, when FNMA commenced its ejectment

action, clearly the property was in the debtor's possession.  As such, the bankruptcy stay

applied and FNMA was required to seek relief from the stay in order to eject the debtor—

that is, to oust her from possession.  See In re Fillion, 181 F.3d 859, 861 (7th Cir. 1999)

("Bass requested that a default judgment be entered against the Fillions for ejectment.

This constituted a continuation of a judicial proceeding against the debtors, and is

prohibited by § 362(a)(1).") (footnote omitted); In re Atlantic Business and Community

Corp., 901 F.2d 325, 328 (3d Cir. 1990); In re 48th Street Steakhouse, Inc., 835 F.2d 427

(2d Cir. 1987), cert. denied, 485 U.S. 1035 (1988).  Thus, the commencement of the

ejectment litigation and its subsequent prosecution were in technical violation of the stay.

            To the extent this court's July 6th order did not authorize ejectment, FNMA

seeks to have the bankruptcy stay "annulled" in order to continue with its state court

possessory lawsuit.  Section 362(d) does permit the automatic stay to be "terminat[ed],

annull[ed], modif[ied] or condition[ed]."  As I noted previously in the memorandum

accompanying the July 6, 2005 order involving Gilpin, the Third Circuit Court of Appeals

has explained that "the inclusion of the word 'annulling' in the statute indicates a

legislative intent to apply certain types of relief retroactively and validate proceedings that

would otherwise be void ab initio."  In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994).  In a

subsequent decision, the Court of Appeals provided the following analysis of the

bankruptcy stay and the power of a bankruptcy court to retroactively terminate it:

> The purpose of the automatic stay is twofold: (1) to protect
> the debtor, by stopping all collection efforts, harassment, and
> foreclosure actions, thereby giving the debtor a respite from
> creditors and a chance "to attempt a repayment or
> reorganization plan or simply be relieved of the financial
> pressures that drove him into bankruptcy;" and (2) to protect

16

"creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors."  Maritime Elec. Co. v. United Jersey Bank, 959 F.2d [1194] at 1204 [3d Cir. 1991].

The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed.  The automatic stay cannot be waived.  Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case.  Id.  A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause.  11 U.S.C. § 362(d)(1).

The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed."  Maritime, 959 F.2d at 1203, 1206.  Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor."  Id. at 1206.  Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied.  11 U.S.C. § 362(c).  Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the ... claim against" the debtor.  Id. at 1207.  This includes the filing of motions, which are void ab initio, unless the bankruptcy court later grants retroactive relief. [FN6] Id. at 1207, n. 13.

> FN6. Generally, judicial actions and proceedings against the debtor are void ab initio absent relief from the stay.  Id.  We have, however, recognized that section 362(d), which requires the bankruptcy court to grant relief from the stay under certain circumstances and permits such relief to be applied retroactively, would allow the bankruptcy court to grant annulment of a stay, thereby making acts in violation of the stay voidable, rather than void ab initio.  See In re Siciliano, 13 F.3d 748, 750-51 (3d Cir. 1994).

17

Constitution Bank v. Tubbs, 68 F.3d 685, 691-92 (3d Cir. 1995) (emphasis added);

accord, e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169,

172 (2d Cir. 1998).  In other words, section 362(d)(1) empowers this court to retroactively

validate the July 19, 2005 state court judgment in ejectment, which was in technical

violation of the automatic stay.

   In general, whether to grant relief from the automatic stay under section

362(d)(1), including the decision whether to annul the stay, is left to the discretion of the

bankruptcy court.  See, e.g., In re National Environmental Waste Corp., 129 F.3d 1052,

1054 (9th Cir. 1997).  In determining whether to exercise such discretion and

retroactively terminate the stay, courts have noted that annulment of the stay is

appropriate only in limited circumstances.  See, e.g., In re Stockwell, 262 B.R. 275, 280

(Bankr. D. Vt. 2001).  In order to help identify such circumstances, some courts have

focused upon the following two factors:

> (1) whether the creditor was aware of the bankruptcy petition;
> and (2) whether the debtor engaged in unreasonable or
> inequitable conduct, or prejudice would result to the creditor.

In re National Environmental Waste Corp., 129 F.3d at 1055.

   Other courts, in analyzing the factors needed to justify annulling the stay,

parse these two factors into more specific elements:

> It is well recognized that a determination of whether to grant
> relief from stay retroactively is within the wide latitude of the
> Court with each decision being considered on a case-by-case
> basis. . . .  The party seeking retroactive lift stay relief has the
> burden of proving that the action taken in violation of the stay
> falls within the narrow exceptions to the rule voiding actions
> taken in violation of the stay. . . .  Similarly, under § 362(g),
> the debtor has the burden of proof with respect to showing
> equitable grounds for denying the requested relief. . . .

In order to determine whether the circumstances are sufficiently compelling to warrant nunc pro tunc lift stay relief, courts have considered a variety of factors:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

In re Stockwell, 262 B.R. at 280-81 (citations omitted); see also In re Williams, 257 B.R. 297, 301 (Bankr. W.D. Mo. 2001).

In sum, courts have generally concluded that annulment of the stay should be limited to circumstances demonstrating "unfair prejudice" to a party, including consideration whether the entity seeking annulment had a valid legal basis for lifting the automatic stay at the time that the challenged action occurred, but failed to request such relief because it was unaware of any bankruptcy filing. See In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999).

At the time FNMA commenced its ejectment action in June 2005, at the time it obtained its judgment in ejectment in July 2005, and at the time it obtained its first writ of possession, August 3, 2005, it had no knowledge of the debtor's pending bankruptcy case. Those actions all occurred before August 17, 2005, the date of debtor's counsel's letter to FNMA's attorney. Moreover, as will now be discussed, had FNMA

19

known of the bankruptcy filing, it likely would have been able to obtain prospective relief

from the stay.

      Although a debtor's mere right of possession, without any right of

ownership or contractual right to possession, falls within the broad scope of section

362(a), this possessory interest is not protected to any great degree by the bankruptcy stay.

Relief from the stay is typically granted to the owner, or a secured creditor of the owner,

when the debtor has no right to possession.  See In re Moore & White Co., Inc., 83 B.R.

277, 281 (Bankr. E.D. Pa. 1988).  Embedded in the concept of "adequate protection" of

an interest in property is the issue of whether there is some legitimate purpose to be

served in bankruptcy by keeping the debtor in possession.  See generally First National

Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir. 1991) (mortgagee properly granted relief

from stay when chapter 13 filing occurred after foreclosure judgment because, under

bankruptcy law in effect at that time, the debtor/homeowner was unable to use chapter 13

to cure the mortgage default); In re Halley, 70 B.R. 283 (E.D. Pa. 1987) (when mortgage

loan matured prepetition, chapter 13 plan may not cure loan default and thus relief from

the stay should be granted).

      If the bankruptcy stay serves no legitimate purpose in retaining the debtor's

possession, then a creditor should be granted relief from the stay to exercise its non-

bankruptcy law rights to recover possession from the debtor.  See, e.g. In re Moore, 267

B.R. 111, 117-18 (Bankr. E.D. Pa. 2001).  Thus, if a foreclosure sale takes place, a

chapter 13 debtor has no right to cure or reinstate his mortgage under Pennsylvania law.

See In re Brown, 75 B.R. 1009 (Bankr. E.D. Pa. 1987); In re Rouse, 48 B.R. 236 (Bankr.

E.D. Pa. 1985).  Nor, after such a sale, does he have any right to cure a mortgage default

20

in a chapter 13 proceeding under current federal bankruptcy law.  11 U.S.C. §

1322(c)(1).  In such circumstances, i.e., where a foreclosure sale has already occurred,

courts have routinely held that relief from the bankruptcy stay generally is appropriate so

the buyer may eject the debtor.  See, e.g., In re Moore, 267 B.R. at 117-18; In re

Belmonte, 240 B.R. 843, 854 (Bankr. E.D. Pa. 1999) (when debtor's ownership interests

in realty were terminated prepetition and the chapter 13 case cannot restore those rights,

cause exists to terminate the bankruptcy stay), rev'd in part, 279 B.R. 812 (E.D. Pa.

2001); In re Yorke, 1996 WL 509614, at *2 (Bankr. E.D. Pa. 1996) ("Since the Debtor

lacks title to her Home . . . she cannot propose a viable plan to cure arrears on, or

liquidate, that mortgage.  Since she cannot confirm a plan achieving these ends, the Bank

is entitled to relief, pursuant to 11 U.S.C. § 362(d)(1), on its Stay Motion"); In re Brown,

75 B.R. at 1009 (stay lifted when bankruptcy filed after foreclosure sale).

       I previously held that the May 20, 2005 foreclosure sale should not be set

aside as violative of the bankruptcy stay, and that decision, on appeal, cannot be revisited

by me.  Thus, for purposes of these disputes, FNMA i the title holder to the Langley

Street property, and the debtor has no right of possession or ability to alter that result

through a chapter 13 reorganization plan.  Accordingly, FNMA is entitled to have the

bankruptcy stay terminated prospectively.  Moreover, as it holds no mortgage or note or

lease obligation, it would be inappropriate to conditionally deny termination of the stay so

long as the debtor tenders monthly payments to it.[6]

---

[6]The debtor suggests that she be permitted to remain in possession of the realty
conditioned upon her tender of monthly payments, which payments would continue until "the
litigation challenging the sale is at an end."  Debtor's Pre-Trial Memorandum, at 6.  If the debtor
seeks a stay pending appeal in order to retain possession, she must make a proper request from an
(continued...)

However, courts are wary about retroactively terminating the bankruptcy stay, not only because the stay has a broad scope designed to protect the interests of the debtor and other creditors, but to reduce the circumstances in which parties act first and only later seek bankruptcy court approval:

> Undoing the stay retroactively should require a measurably greater showing. Congress intended the stay to afford debtors breathing room and to assure creditors of equitable distribution. . . . If retroactive relief becomes commonplace, creditors--anticipating post facto validation--will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated.
>
> We believe that Congress created the automatic stay to ward off scenarios of this sort. Thus, if congressional intent is to be honored and the integrity of the automatic stay preserved, retroactive relief should be the long-odds exception, not the general rule.

In re Soares, 107 F.3d 969, 977 (1st Cir. 1997).

FNMA learned of the debtor's bankruptcy filing around August 17, 2005. It did not act to enforce its first writ of possession, and had the writ reissued on October 17, 2005.  It opted not to seek any ruling regarding the scope of the bankruptcy stay from this court until January 2006, despite the debtor's assertion that the stay was still in effect as to ejectment.  Given FNMA's inactivity in state court for some months, there was no reason that it could not have sought some determination of its rights from this court.

I appreciate that the debtor also remained inactive for months after learning of the ejectment action against her.  And I understand that she has remained in the

---

[6](...continued)
appellate forum, as she previously did not seek such relief in this forum prior to any ruling from the district court.

premises without charge during this period.  And further, that this bankruptcy case was, as upheld by the district court, commenced in bad faith.  Thus, the issue concerning annulment is a close one.

Weighing all of these circumstances, I conclude that the better exercise of discretion is to partially annul the stay, retroactive until August 17, 2005, when FNMA first learned of the bankruptcy filing.  Thus, its ejectment lawsuit and judgment will not be invalidated.  Such relief is warranted given the debtor's earlier bad faith filing determination, FNMA's lack of knowledge and the debtor's mere possessory interest in her former residence.

However, FNMA's writ of possession was reissued in October 2005, after it knew of her bankruptcy filing and in technical violation of the bankruptcy stay.  In other words, FNMA will be granted only prospective relief to enforce its ejectment judgment and must obtain a new writ of possession in state court.  See generally In re Harris, 203 B.R. 46 (Bankr. E.D. Va. 1994).

IV.

My rulings regarding the motion filed by FNMA affect to some degree the plaintiffs' request for relief.

Earlier, I concluded that Mr. Boates had no standing to seek relief under section 362(h) as he is a non-debtor, and failed to state a cause of action, as the co-debtor stay cannot apply to defendant FNMA, which is a non-creditor.  In addition, by partially annulling the stay and granting only prospective relief regarding enforcement of the

23

ejectment judgment, I have implicitly allowed a portion of the equitable relief sought by

the debtor.  To the extent that the debtor sought further equitable relief, that request is

denied.  The debtor has not demonstrated any basis to permit her to remain in the realty

pending the conclusion of the appellate process, absent the issuance of a stay pending

appeal from the appropriate forum.

Insofar as monetary relief under section 362(h) is concerned, my decision

not to completely validate FNMA's post-bankruptcy actions renders unnecessary any

ruling upon whether the annulment of the bankruptcy stay precludes a debtor from

obtaining relief for willful violation of the automatic stay.  See In re Williams, 323 B.R.

691, 702 (B.A.P. 9th Cir. 2005) (noting that there is no consensus on the question whether

annulment of the stay precludes sanctions under 362(h)).  I shall accept that FNMA did

violate the automatic stay when it sought to enforce its ejectment judgment after learning

of the debtor's bankruptcy filing.

But only a willful, as opposed to a technical, violation of the stay justifies

any award under section 362(h).  Where the scope of the bankruptcy stay is uncertain and

there is some support for the creditor's actions, there is no willful violation. See, e.g., In

re University Medical Center, 973 F.2d 1065, 1088-89 (3d Cir. 1992); In re Hawk, 314

B.R. 312, 317-18 (Bankr. D.N.J. 2004).

As I acknowledged previously, the July 6th order should have more clearly

made known the limited nature of the relief granted, particularly as to third-parties who

would not have been aware that Gilpin had not received the broader relief it had

requested.  Accordingly, I cannot find that FNMA's interpretation of the earlier lift-stay

order was obviously incorrect.  As I result, I cannot find its actions in enforcing its

24

ejectment judgment as willful.  Thus, the debtor is not entitled to relief under section

362(h).

      Moreover, even if I were to assume that the respondent's conduct

constituted a "willful" violation of the bankruptcy stay, it clearly was insufficiently

egregious as to justify the imposition of punitive damages.  Punitive damages for the

violation of the bankruptcy stay should be awarded only for egregious, malicious conduct.

See, e.g., Lovett v. Honeywell, Inc., 930 F.2d 625, 628-29 (8th Cir. 1991); In re Atlantic

Business and Community Corp., 901 F.2d at 329 (punitive damages may be awarded

under section 362(h) for the creditor's "bad faith" violation of the stay); In re Ketelsen,

880 F.2d at 993; Davis v. IRS, 136 B.R. 414, 424 (E.D. Va. 1992); In re Owen, 169 B.R.

261 (Bankr. D. Me. 1994).  FNMA's conduct was definitely not malicious, egregious or

in bad faith.  It was erroneous at most.

      Insofar as compensatory damages are concerned, after consideration of all

of the evidence as well as the credibility of the witnesses, I conclude that the debtor has

not met her burden of demonstrating the amount of damages caused by FNMA's conduct.

See, e.g., In re Rashid, 1998 WL 288426 *3 (E.D. Pa. 1998); In re McHenry, 179 B.R.

165 (B.A.P. 9th Cir. 1995); Gordon v. Dennis Burlin Sales, Inc., 174 B.R. 257 (Bankr.

N.D. Ohio 1994); In re Whitt, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987) (No damages can

be "awarded as a result of the violation of the automatic stay . . . [if] there was no

evidence that the debtor suffered any harm.").

      I appreciate that the debtor testified that she and her daughter and husband

are extremely upset and despondent at the prospect of losing their home.  Further, she

testified to certain medical expenses that were incurred.  Nonetheless, where she and her

family have been suffering from numerous illnesses for a considerable period of time, and

where Gilpin and not FNMA prosecuted the foreclosure sale, and where this court in July

2005 upheld that sale, which sale resulted in the loss of ownership of their home, it

becomes difficult to quantify how much of the stress, depression and medical expenses

incurred arose from FNMA's actions, as opposed to Gilpin's actions or the foreclosure

process in general, and as opposed to their pre-existing medical conditions.  Under these

circumstances, and given that the burden of persuasion falls upon the debtor/plaintiff, I

agree with the position argued by FNMA that any monetary award as a sanction against it

would be highly speculative and inappropriate.

       Furthermore, even if I were able somehow to quantify an amount of actual

damage caused by FNMA, in limited circumstances damage awards under section 362(h)

may be offset by amounts owed to the sanctioned entity, where such offset would not

undermine the purposes of section 362(a).  See United States v. McPeck, 910 F.2d 509,

513 (8th Cir. 1990); In re Weisberg, 218 B.R. 740, 754 (Bankr. E.D. Pa. 1998) ("[W]e

will simply set off the Debtor's entire § 362(h) claim, including any component for

attorneys' fees, against the potentially dischargeable claims of FWRV against the Debtor

under § 523(a)(5)."). Compare In re Sechuan City, Inc., 96 B.R. 37, 44-45 (Bankr. E.D.

Pa. 1989) (offset not warranted because willful conduct of lessor precluded any

reorganization of the debtor).

       Here, I need not be concerned that there would be an offset of a

dischargeable, prepetition claim—as FNMA holds no such claim.  Nor have any actions

of FNMA affected the rights of any creditor of the debtor or the chapter 13 trustee, nor

jeopardized this chapter 13 reorganization.  Instead, I note that the debtor and her family

are living in property acquired by FNMA postpetition and without any payment for such

use.  Prior to the foreclosure sale, they were obligated to pay about $800 per month under

their note and mortgage with Gilpin.  Without this expense, they are wisely saving funds

which may assist them in acquiring some realty in the future.

       The amount of the debtor's savings since June 2005, when FNMA obtained

the sheriff's deed, would probably equal or exceed the amount of actual damages, if any,

suffered by her due solely to FNMA's conduct.

       Accordingly, for all of these reasons, I conclude that the debtor is not

entitled to any monetary relief or counsel fees under section 362(h).

V.

       In summation, I agree with the debtor that it is unfortunate that her home

was sold at a foreclosure sale.  That outcome was the result of  advice, decisions and/or

representations made by the debtor or third-parties, as well as the result of circumstances

not involving FNMA.  If FNMA agrees to sell the property back to her, as she now

wishes, and if the debtor's purchase will not violate any bankruptcy provision, the parties

may be free to act.  I, however, cannot compel that result.

       Based upon the evidence presented, I hold that FMNA is entitled to partial

annulment of the bankruptcy stay, and prospective termination of the automatic stay to

enforce its ejectment judgment.  The debtor's request for injunctive relief is made moot in

part by this ruling and denied in part.  Finally, for a number of reasons, the debtor is not

entitled to monetary damages or attorney's fees from FNMA.

27

These various rulings do not affect the earlier order of July 6, 2005, pending on appeal, which annulled the bankruptcy stay in favor of Gilpin so that the creditor could foreclose upon and have a sheriff's deed recorded for the Langley Street realty.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| SUSAN MAE BOATES | : | |
| Debtor | : | Bankruptcy No. 05-17077 |

SUSAN MAE BOATES and   :
RICKY L. BOATES

                               :

           Plaintiffs

     v.                      :

FEDERAL NATIONAL MORTGAGE   :   Adversary No. 06-0053
ASSOCIATION
         Defendant         :

.................................................

ORDER

.................................................

AND NOW, this 22nd day of February 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered as follows:

1. The motion of FNMA for retroactive relief from the bankruptcy stay is granted in part.  The stay is annulled for those actions taken by FNMA as of August 17, 2005.  It is not annulled thereafter.  Thus, actions taken by FNMA after August 17, 2005 in violation of 11 U.S.C. § 362(a) are voided.

2. The bankruptcy stay is terminated as of this date so that FNMA (and its successors and assigns) may exercise its state law rights to enforce its ejectment judgment and obtain possession of the real property located at 1024 Langley Street, Trainer, Pennsylvania.

3. Judgment is entered in favor of defendant FNMA and against the

plaintiffs on the plaintiffs' claim for damages, fees and injunctive relief under 11 U.S.C. §

362(h), except to the extent consistent with paragraphs 1 and 2 of this order.


_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Leslie J. Rase, Esquire
Von Rosenstiel Law Office
649 South Avenue, Suite 6
P.O. Box 307
Secane, PA 19018

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Ms. Susan Mae Boates
1024 Langley Street
Trainer, PA 19061